# GREENBERG FREEMAN LLP

Sanford H. Greenberg
sgreenberg@greenbergfreeman.com

May 12, 2025

BY ECF
Honorable Valerie Figueredo
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 1660
New York, New York 10007

Re: Katharine Morling v. UCP International Co., Ltd.
Case No. 24-cv-04081 (VSB) (VF)

Dear Judge Figueredo:

I represent defendant UCP International Co., Limited ("UCP"). Pursuant to Your Honor's direction, below are citations to case law supporting UCP's position that personal jurisdiction over UCP cannot exist here under C.P.L.R. 302(a)(2) or a stream of commerce theory.

Jurisdiction under C.P.L.R. § 302(a)(2) cannot exist here because UCP did not commit an act of alleged infringement *in New York*, and neither UCP nor an agent acting on its behalf committed an act of infringement while physically present in New York. *See Creative Photographers, Inv. v. Televisa, S.A.B.*, 23-cv-7106 (LJL), 2024 WL 1533189, at *9 (S.D.N.Y. Apr. 8, 2024). Further, placing goods into the "stream of commerce" is only applicable to the *foreseeability* prong of a jurisdictional analysis under § 302(a)(3). *See, e.g.*, *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 537-43 (S.D.N.Y. 2019) (addressing C.P.L.R. § 302(a)(3)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289-90 and n.7 (1980) (addressing the Oklahoma equivalent of C.P.L.R. § 302(a)(3)).

1. **Personal Jurisdiction Under § 302(a)(2) Requires the Alleged Tortious Conduct to Have Occurred in New York, By a Defendant or Its Agent Who Was Physically Present in New York.**

Jurisdiction cannot exist over UCP pursuant to C.P.L.R. § 302(a)(2) because UCP did not commit a tortious act *in New York*. UCP had the goods manufactured in China, sold and distributed them in Hong Kong, S.A.R., the goods were imported by a third party in California and New Jersey, and then they were sold in the United States by The Michaels Stores, Inc. Section 302(a)(2) subjects liability based on the "commi[ssion of] a tortious act *within the* state" of New York. C.P.L.R. § 302(a)(2). Copyright infringement and trademark infringement is itself the "tortious act." *See, e.g.*, *Lipton v. The Nature Company*, 781 F. Supp. 1032, 1035 ("Copyright infringement is

a commercial tort that is deemed to take place at the point of consumer purchase."). "The Second Circuit has held that Section 302(a)(2) 'reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.'" *Creative Photographers*, 2024 WL 1533189 at *9 (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *Edward v. Roman Cath. Biship of Providence*, 66 F.4th 69, 75 (2d Cir. 2023); *Longiness-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 80, 261 N.Y.2d 8 (N.Y. 165); *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 499 (S.D.N.Y. 2016); and *7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*, 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015)). In *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, the Second Circuit reaffirmed that personal jurisdiction under § 302(a)(2) required a defendant's physical presence in New York. 171 F.3d 779, 789-90 (2d Cir. 1999). There, the plaintiff argued that the defendant "committed a 'tortious act in New York' by sending a fraudulent opinion to the banks in New York." *Id.* at 790. The Second Circuit rejected that argument, reaffirming that a defendant's *physical presence in New York* is a prerequisite for personal jurisdiction under § 302(a)(2). *Id.*

To the extent that Morling is predicating jurisdiction over UCP based on *sales by The Michaels Stores, Inc.*, there is no factual or legal basis for that position. In *Creative Photographers*, Judge Liman also addressed the additional requirements for establishing personal jurisdiction over a defendant under § 302(a)(2) based on acts by that defendant's agent, explaining that a defendant may also be subject to personal jurisdiction under § 302(a)(2) "when its agent commits a tort in New York state from which the cause of action arises." *Id.* at *9. However, "[t]o be considered an agent under section 302, the alleged agent must have acted 'for the benefit of and with the knowledge and consent' of the non-resident principal and the non-resident principal must have 'exercised some control over' the alleged agent." *Edwardo*, 66 F.4th at 74 (quoting *Kreutter*, 522 N.E. 2d at 44); *accord Creative Photographers*, 2024 WL 1533189 at *9 (quoting same); *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90-93 (S.D.N.Y. 1997) (the defendant was not subject to personal jurisdiction under § 302(a)(2) because it did not commit an act of infringement "in person" in New York, and the only party physically present in New York was not its "agent").

Here, there is no basis for personal jurisdiction *over UCP* based on sales by an independent entity, The Michaels Stores, Inc. The Michaels Stores, Inc. does not act "for the benefit of and with the knowledge and consent of" UCP, and UCP does not exercise control over The Michaels Stores, Inc. *See Edwardo*, 66 F.4th at 74; *see also* ECF No. 19-2; *Morling v. The Michaels Companies, Inc. et al.*, No. 23-CV-08420 (VSB), ECF Nos. 18-1 (motion to dismiss), 18-2 (The Michaels Companies, Inc. declaration), 18-3 (The Michaels Stores Procurement Company, Inc. declaration). Indeed, in Morling's separate case against The Michaels Companies, Inc. (No. 23-CV-08420 (VSB)), she has asserted that The Michaels Stores, Inc. is the agent of The Michaels Companies, Inc. and of Michaels Stores Procurement Company, Inc., No. 23-CV-08420 (VSB), ECF No. 1 ¶ 10, which has been disputed, No. 23-CV-08420 (VSB), ECF Nos. 18-1, 18-2, 18-3.

Morling's reliance on *Capital Records, Inv. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520 (LAP), 2024 WL 405961 (S.D.N.Y. Mar. 4, 2004), is misplaced. In *Capital Records*, the court was addressing whether venue was proper under 17 U.S.C. § 1400(a). *Id.* at *1. The court considered jurisdiction appropriate over the non-resident defendant because "an actual sale of the allegedly infringing product by [the defendant] to an entity in New York satisfies minimum contacts and renders [the defendant] amenable to suit in [New York]." *Id.* at *2. There, *the sale occurred* in New York, which the court

stated was sufficient for jurisdiction under C.L.P.R. § 302(a)(2) and therefore venue. *Id.* As the court articulated, "plaintiff's cause of action clearly arises from the defendant's attempts to sell or distribute its products *in New York*, so the nexus requirement of 302(a)—that the cause of action arises from acts of the defendant that form the basis for personal jurisdiction—is satisfied." *Id.* Though that statement cannot be reconciled with the Second Circuit's precedent that "'a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2),'" *Thackurdeen v. Duke Univ.*, 660 Fed. Appx. 43, 46 (2d Cir. 2016) (quoting *Bank Brussels Lambert*, 171 F.3d at 790), the defendant's sale of goods to a New York entity likely satisfied personal jurisdiction under § 302(a)(1), which provides for jurisdiction based on "transact[ing] any business within the state or contract[ing] anywhere to supply goods or services in the state."

Under long-standing Second Circuit precedent, jurisdiction under § 302(a)(2) requires a defendant's physical presence in New York. *Bank Brussels Lambert*, 171 F.3d at 790 ("a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."); *Thackurdeen*, 660 Fed. Appx. at 46 (quoting same). Under *Capital Records*, jurisdiction over UCP would be lacking because UCP did not sell allegedly infringing goods to a New York entity or distribute them into New York. Because UCP did not commit an act of alleged infringement in New York, and was not present in New York when it allegedly infringed Morling's copyrights, jurisdiction cannot be established under § 302(a)(2).

Here, UCP's acts consist of (1) having the goods manufactured in China and (2) selling the goods in Hong Kong to a subsidiary entity within the Michaels organization. Those goods were then imported into the United States by a Michael's subsidiary, and were sold within the United States by The Michaels Stores, Inc. Thus, the critical question for personal jurisdiction under § 302(a)(2), and therefore the critical issue for *jurisdictional* discovery, is *the location where* the act(s) of alleged infringement *occurred*, and whether UCP was ever physically present in New York. Jurisdiction under § 302(a)(2) depends specifically on *whether* the alleged tort (i.e., infringement) occurred in New York, by a defendant that is physically present in New York. *Bank Brussels Lambert*, 171 F.3d at 790. And as applied to this case, it depends on *where* the alleged act of infringement *by UCP* occurred. Here, UCP's only acts *occurred in Hong Kong, S.A.R.* (including the P.R.C.). While UCP also contends that those acts are not "infringements", that is a merits issue; but as to *personal jurisdiction* the issue that the Court must address is *where* the tortious act *occurred*.

### 2. A "Stream of Commerce" Theory Addresses Only the *Foreseeability* Element of Jurisdiction Under C.P.L.R. § 302(a)(3), Not Jurisdiction Under § 302(a)(2).

Finally, Morling's argument that jurisdiction under § 302(a)(2) can be based on a "stream of commerce" theory is contrary to the law and is otherwise inapplicable to the facts of this case. A "stream of commerce" theory addresses only the *foreseeability* analysis applicable in cases where the tortious injury occurs within the forum state based on conduct that occurred outside of the forum state; it is not an independent basis for jurisdiction, and it is inapplicable to cases of copyright or trademark infringement. Here, Morling is not a New York resident or domiciliary; she lives in England, where the alleged harm would have occurred.

In *World-Wide Volkswagen Corp.*, the Supreme Court articulated the limits of a "stream of commerce" theory in a products liability case, addressing the Oklahoma equivalent of C.P.L.R. § 302(a)(3). 444 U.S. at 287, 289-90 and n.7. The Court addressed the notion of putting products

into the "stream of commerce" to articulate the Due Process Clause's "critical" foreseeability requirement. *Id.* at 297. "But the foreseeability that is critical to the due process analysis is not there mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the form State are such that he should reasonably anticipate being haled into court there." *Id.* That requires "purposeful availment" of the forum. *Id.* at 297. "Hence if the sale of a product by a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum State." *Id.* at 297-98.

These principles were addressed in *McDonough v. Cycling Sports Grp., Inc.*, 392 F. Supp. 3d 320 (W.D.N.Y. 2019), which Morling has cited, a case that *contradicts* her arguments for personal jurisdiction. *McDonough* was a products liability case where the *injury* occurred in New York. *See id.* at 323. The court considered whether the defendant's product, placed into the "stream of commerce," could support jurisdiction under § 302(a)(3). *Id.* at 327-29. Section 302(a)(3), however, requires even greater ties to New York *in addition to* the injury occurring in New York. *See id.* at 327.

Further, *RegenLab*, a case cited in *McDonough* and also cited by Morling, defeats Morling's jurisdictional arguments. In *RegenLab*, the court analyzed personal jurisdiction under C.P.L.R. § 302(a)(3), explaining that: "In *Kernan v. Kurz-Hastings*, this Circuit held that the existence of an exclusive distributorship agreement with an entity that distributes the products at issue in the forum state, combined with 'general knowledge' that the distributor would resell the relevant products throughout the United States, *satisfies the reasonable expectation requirement* [of § 302(a)(3)(ii)]." *Id.* at 541 (citing *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999)) (emphasis added). The *RegenLab* court **did not** hold, or even suggest, that it satisfies *jurisdiction* under § 302(a)(3), or § 302(a)(2). The *RegenLab* court held:

> Estar avers that it did not design the product specifically for the New York market, does not advertise in New York, and does not continuously or deliberately exploit the New York market. Def Reply at 8. Further, *Eclipse's* New York sales **are insufficient** to attribute purposeful availment to *Estar*. The Supreme Court has made clear that "the 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State' because it is **essential** that the *defendant* take actions purposefully availing him or her of the privileges and benefits of the forum states."

*Id.* at 544-45 (quoting *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1380 (Fed. Cir. 2015) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253-54(1958))) (italics in original, bold emphasis added). Here, the "stream of commerce" is inapplicable to the jurisdictional analysis for UCP. Morling has no argument that UCP is subject to jurisdiction under § 302(a)(3).

Jurisdiction in this case cannot be based on § 302(a)(2), because UCP did not commit an allegedly tortious act *in New York* and, moreover, it was not physically present in New York. The

critical question for both the merits of UCP's jurisdictional challenge and for the limits of jurisdictional discovery, is the *location* where the alleged infringment(s) occurred and if UCP committed those acts. If the act(s) of infringement occurred outside of New York, it cannot support jurisdiction under § 302(a)(2). Jurisdiction also cannot be based on a third-party's acts of alleged infringement (e.g., sales by The Michaels Stores, Inc.), because UCP was not exercising control over such actions and such sales were not "for the benefit of and with the knowledge and consent" of UCP. *See Creative Photographers*, 2024 WL 1533189 at *9. Finally, Morling was not injured in New York, so § 302(a)(3) and her "stream of commerce" theories are inapplicable to this action. The issues for the Court to consider here, and the issues for jurisdictional discovery, relate only to the location of the alleged infringing acts.

Respectfully submitted,

/s/ Sanford H. Greenberg
Sanford H. Greenberg

cc: David MS Jenkins (by ECF)